## Case No. 3;867.

### DEXTER et ux. v. SPEAR.

[4 Mason, 115.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1825.

LIBEL — WHAT CONSTITUTES — PRESUMPTION OF MALICE—NEWSPAPER PUBLICATION — LIABILITY OF PUBLISHER AND AUTHOR.

1. Any publication. the tendency of which is to degrade and injure another person, or to bring him into contempt, ridicule, or hatred, or which accuses him of a crime, punishable by law, or of an act odious or disgraceful in society, is a libel.

2. Where a publication is libelous, and is knowingly made, the law presumes it malicious, unless it is proved to be published on an innocent or justifiable occasion.

3. Malice, in the sense of the law, means wilfulness.

[Cited in Wiggin v. Coffin. Case No. 17,624; U. S. v. Taylor, Id. 16,442.]

4. It is no justification or excuse for a libel printed in a newspaper, that the printer of the newspaper did not personally know the party libelled.

5. The publisher is equally responsible with the author of a libel.

Case for a libel on the wife before marriage. The declaration alleged the purport to be a charge of illicit and criminal intercourse between the husband [Edward Dexter] and wife before the marriage. The libel was contained in a newspaper called "The Beacon," which was published by the defendant [William S. Spear]. Plea not guilty.

At the trial the cause was argued by R. W. Greene and Mr. Tillinghast for the plaintiffs, and by Rivers & Whipple for the defendant.

In the defence it was contended. (1) that the publication was not a libel on any person; (2) that if a libel, it was not applied or applicable to the wife; (3) that if applied to the wife, it was not a malicious publication; that the defendant was not the author of it, but it was a communication to him, and he was not personally acquainted with the plaintiffs; that unless there was malice, the action was not maintainable. If the author had malice, that was not sufficient. unless the publisher also had malice, &c., &c.

[1] [Reported by William P. Mason, Esq.]

For the defendants were cited People v. Croswell, 3 Johns. Cas. 354; Holt, Libel, 307; 3 Chit. Cr. Law, 867, 869; Lamb's Case, 9 Coke, 59.

For the plaintiffs were cited Holt, Libel, 54, 55, 223, 234, 241, 242, 243, 240, note; 10 Johns. 443; Russ. Crimes, 303, 340.

The cause was argued at great length; but the arguments are not thought necessary to be reported at large, as they were principally addressed to the facts, and the points of law are stated in the opinion of the court.

STORY, Circuit Justice (after summing up the facts to the jury). This cause has been argued, as if there was something peculiar in an action for a libel, and as if it rested on harsh and extraordinary principles, not to be encouraged in an enlightened age. I know of nothing that justifies such a notion. The case of libels stands upon the same general grounds as other rights of action for wrongs. The general rule of law is, that whoever does an injury to another is liable in damages to the extent of that injury. It matters not, whether the injury is to the property, or the person, or the rights, or the reputation, of another. The law has declared all these entitled to its protection; and whoever wantonly assails them must answer in damages for the consequences. Civil society could not exist upon any other terms. Injuries to the reputation, by gross slanders and degrading libels, are oftentimes more extensive in mischief, and more fatal to the public peace and to private happiness, than any which can affect mere corporeal property. Indeed the dearest property, which a man has, is often his good name and character; and as to a woman, without the possession of a fair fame, and pure, unsullied chastity, she is deemed a ruined outcast, unworthy of confidence, and sunk in irretrievable degradation.

Nor is there any difficulty in defining or ascertaining what the law deems a libel. Notwithstanding the suggestions thrown out in the defence, it is as plain and well settled as any doctrine of the law. Any publication, the tendency of which is to degrade and injure another person, or to bring him into contempt, ridicule, or hatred; or which accuses him or her of a crime punishable by law, or of an act odious and disgraceful in society, is a libel. If it is false, he who knowingly writes, publishes, or circulates it, is responsible, in a civil action, for damages to the party injured. No man has a right to state of another that, which is false and injurious to him. A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper. The liberty of speech, or of the press, has nothing to do with this subject. They are not endangered by the punishment of libellous publications. The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation. There can be no

right in printers, any more than in other persons, to do wrong. If a writing is libellous, and is knowingly published, the law presumes it to be malicious, unless it is proved to be published on an innocent or justifiable occasion. No man can protect himself from responsibility for a libel by pleading his ignorance of the real parties who are attacked, if he knows the publication to be libellous. He is bound not to do a wrong to another, whether personally known or unknown to him. Indeed, malice is so far from being disproved, by showing that the printer did not know who were the parties libelled, that it often aggravates the malignity of the case, by showing a wanton and indiscriminate malice, and an indifference to the peace of the innocent. It often takes away the pretence of good motives in the publication, since the party does not know and does not care, whether it be truth or falsehood. A printer of a newspaper is bound to abstain from publications, which he knows to be libellous, with more than ordinary care, for the wide circulation of his paper may often inflict upon the innocent an irreparable injury. It is no apology for him, that he is not the author; he who wantonly publishes a libel is just as guilty, in the eye of the law, as he who writes it. The author may write from private malice; but the injury is done by the publication.

The real questions then for the jury are, in the first place, whether the publication is a libel; and of this it seems to me there can be no doubt, unless we choose to shut our minds against the obvious meaning of the language. If it is a libel, then the next consideration is, whether the wife was the party alluded to, and whether the import of the language is truly set forth in the innuendoes in the declaration. The next inquiry is, whether the publication was made, by the defendant, with a knowledge that it was libellous. If so, the law presumes it to be malicious; for there is no pretence to say, that there was any justification from the occasion of publication, and an act is deemed malicious, not only when it arises from personal spite, but when it is a wanton and intentional injury. Malice is wilfulness. See Duncan v. Thwaites, 3 Barn. & C. 556, 584, 585; Bromage v. Prosser, 4 Barn. & C. 247.

Verdict for plaintiffs, $800.