#### OF THE

## STATE OF NEW-YORK,

### IN MAY TERM, 1848.

---

## KILPATRICK *vs.* THE PEOPLE.

An indictment charging that the defendant "with force and arms, unlawfully, wilfully, and maliciously did break in pieces and destroy two windows in the dwelling house of M. C. to the great damage of the said M. C. and against the peace," &c. does not set forth an offence indictable by the laws of this state.

An act which would otherwise be only a private trespass, does not become indictable by being charged to be done with force and arms.

Nor by being alleged to have been committed maliciously, or without claim of right, or without any motive of gain.

Whether if the breaking of the windows in this case had been charged to have been done *secretly*, or in the *night time*, the act would have been indictable, *quære. Per* BEARDSLEY, C. J.

The cases in which indictments have been sustained for maliciously killing or wounding domestic animals, depend upon features peculiar to such offences, as the depravity of mind, and the cruelty of disposition, which such acts evince.

ERROR to the Seneca general sessions. The plaintiff in error was indicted in the sessions in May, 1845, for that he "being an evil disposed person, on the twentieth day of March, 1845, with force and arms, at the town of Ovid, in the county of Seneca aforesaid, unlawfully, wilfully, and maliciously, did

[277]

break in pieces and destroy, two windows, in the dwelling house of Moses Cory, (he, the said Moses Cory being the owner of said windows,) to the great damage of the said Moses Cory, against the form of the statute in such case made and provided, and against the peace of the people of the state of New-York and their dignity." Plea, not guilty. A trial was had at the February term, 1846, when the defendant was found guilty. There was a continuance to the May term, 1847, when judgment was rendered against the defendant, and he was sentenced to pay a fine of seventy-five dollars. He brought error to this court.

*H. Denio,* for the plaintiff in error. The act charged in the indictment is a mere trespass, and not an offence indictable at common law. (*Rex* v. *Wheatley,* 2 *Burr.* 1125; *Same* v. *Storr,* 3 *id.* 1698; *Same* v. *Atkins, id.* 1706; *Same* v. *Bake, id.* 1731; *Same* v. *Combrune,* 1 *Wils.* 301; *Same* v. *Buck,* 1 *Stra.* 679; *Same* v. *Channell,* 2 *id.* 793; *Hawk. P. C. book* 2, *ch.* 25, § 4.)

*S. Stevens,* for the people, argued that the offence was indictable within the principle of the cases of *The People* v. *Smith,* (5 *Cowen,* 258,) and *Loomis* v. *Edgerton,* (19 *Wend.* 419.)

*By the Court,* BEARDSLEY, Ch. J. The charge in this indictment is, that the defendant below, with force and arms, " unlawfully, wilfully and maliciously, did break in pieces and destroy two windows in the dwelling house of Moses Cory," and the jury have found the charge to be true. Upon this the question arises, whether the laws of this state make such an act as is here described an indictable offence.

The indictment alleges that the act was done " against the form of the statute in such case made and provided ;" but we have no such statute as this averment supposes, and the indictment must be sustained by the common law or not at all.

The act charged to be a crime, was done " with force and arms," for so the indictment alleges. These, however, are

words of mere form in the description of many civil injuries, as well as of crimes, and do not import that the wrong complained of is an indictable offence. (*Rex* v. *Storr*, 3 *Burr.* 1698; *Rex* v. *Atkins, id.* 1706; *Rex* v. *Bake, id.* 1731; *The King* v. *Wilson*, 8 *D. & E.* 360; *The Commonwealth* v. *Taylor*, 5 *Bin.* 277.)

In what respect, then, was this act more than a mere trespass? It is not alleged to have been done in the night time, nor in a secret manner; and it lacks the ingredient of cruelty to a domestic animal, which, in some cases, has been held to change, what otherwise would have been a simple trespass, into a criminal offence.

In *Loomis* v. *Edgerton*, (19 *Wend.* 419,) the plaintiff had "wilfully, wickedly, maliciously, and in a *secret* manner, seized and broken in pieces a cutter, belonging to the defendant," and this was said by the court to be a " criminal offence." So in *The Commonwealth* v. *Taylor*, (*supra*,) Tilghman, Ch. Justice, said : " In the case of *The Commonwealth* v. *Teischer*, 1 *Dal.* 335, judgment was given against the defendant for maliciously, wilfully and wickedly killing a horse." These are the words of the indictment, and it seems to have been conceded by Mr. Sergeant, the counsel for the defendant, that if it had been laid to be done *secretly*, the indictment would have been good. Here the entering of the house is laid to be done *secretly*, maliciously, and with an intent to disturb the peace of the commonwealth." In the same case, Yeates, J. said: " The jury have found by their verdict, that the defendant in the *night time*, unlawfully, maliciously, and *secretly*, with force and arms, broke and entered the dwelling house of James Strain, with intent to disturb the peace. The several circumstances of *time*, *manner*, temper of mind, the deliberate act, breach of the peace, and the injurious consequences attendant thereon, form strong characteristical features of a public offence, punishable by the criminal law."

In both the cases referred to, stress is laid on the fact that the act was done in *secret*, and in one of them that it occurred in the *night time*, in both which respects the case before us is dis-

tinguishable, for it is not alleged to have been clandestine or nocturnal.

The case of *The People* v. *Smith,* (5 *Cowen,* 258,) was an indictment " for maliciously, wickedly and wilfully killing a cow, the goods and chattels of John Dibble." Woodworth, J. in pronouncing the opinion of the court said, " such an act discovers a degree of moral turpitude, dangerous to society ; and for their security, ought to be punished criminally. It is an evil example of the most pernicious tendency, inasmuch as the act is an outrage upon the principles and feelings of humanity. The direct tendency is a breach of the peace. What more likely to produce it, than wantonly killing, out of mere malice, a useful domestic animal ?" On the same principle, in *Respublica* v. *Teischer,* (1 *Dal.* 335,) " an indictment for maliciously, wilfully and wickedly killing a horse," was held to be good at common law. The case of *State* v. *Briggs,* (1 *Aik. R.* 226,) was sustained on the same ground. It was an indictment for cutting, maiming and destroying colts. Hutchinson, J. said, " when the most wanton cruelty to the beast is the gravamen, we may pass by the civil injury, and treat the deed as a misdemeanor at common law. With force and arms, to injure the property of another, is a civil injury, for which the owner of the property may have his remedy, by action of trespass. But the wounding and torturing a living animal, not only with force and arms, but with all the wicked and malicious motives and intentions, set forth in this indictment, is a misdemeanor to be punished by the judges." See also *Commonwealth* v. *Leach,* (1 *Mass.* 59.) Upon this point, however, the authorities are not all agreed. *Ranger's case,* (2 *East's P. C.* 1074,) was an indictment at common law, for unlawfully maiming a colt, the goods and chattels of one Collyer. " Upon reference to the judges after conviction, they all held that the indictment contained no indictable offence ; for if the case were not within the black act, the fact in itself was only a trespass; for that the words *vi et armis* did not imply force sufficient to support an indictment." And in a late case in the supreme court of Vermont, (*State* v. *Wheeler,* 3 *Vermont R.* 344,) it was adjudged

Kilpatrick *v.* The People.

that an indictment at common law could "not be sustained for feloniously, maliciously, mischievously and wickedly killing a beast, the property of another," thereby, necessarily, disregarding and overruling the prior case in the same court, of *State* v. *Briggs*, to which reference has been made.

The case now before us lacks the ingredient of wanton cruelty to a domestic animal, nor was the act done in secret or at night. What then makes this a crime more than any other trespass? The answer given is that the deed was done with malice, and for the mere purpose of injuring another, and without the slightest hope of gain to the wrongdoer. In these respects *Ranger's case, (supra,)* was the same as this, as also was *State* v. *Wheeler, (supra.)* And in *Brown's case,* (3 *Greenl.* 177,) the supreme court of Maine expressly adjudged that the malicious girdling of fruit trees on the land of another person, was not indictable at common law.

An act is not indictable simply because done with malice. "Malice is wilfulness." (*Dexter* v. *Spear,* 4 *Mason,* 115.) The act is not done in ignorance or under a belief of right, but with a wicked intent to inflict an injury. (1 *Russ. on Cr.* 483, (*i*), ed. 1845; *McPherson* v. *Daniels,* 10 *B. & C.* 272, *per Littledale, J. ; Rex* v. *Hervey,* 2 *id.* 268, *per Best, J.*)

Malice is an ingredient in every intentional wrong ; yet such acts are, by no means, universally indictable. Nor am I aware of a single case in which a malicious intent to do the injury complained of, there being no expectation or hope of benefit to the wrongdoer, has ever been held to make a trespass indictable at the common law. I am compelled to admit, however, that the case of *Commonwealth* v. *Eckert,* (2 *Brown's R.* 249,) looks in that direction ; but, whatever may be thought of that case, it was put by the court on the ground that the tree destroyed was useful to the public, and therefore the remedy by indictment was proper. Franklin, president, said to the jury, "If you should consider the tree was useful, for public convenience, ornament and shade, (which we think has been fully proved,) you may convict the defendant ; if not, acquit him." Upon this charge the prisoner was found guilty. It is manifest

that the principle on which this case was decided has no application to the one now before the court.

If the ingredient of malice, there being a total absence of all hope of gain, would make a trespass indictable, the mass of statutes in this state, as well as in England, which declare that such acts shall be indictable as misdemeanors, are at best useless, except as they may modify the punishment to be inflicted. We have statutes which declare that various wilful trespasses, as the cutting down of trees on the land of another person; the killing, maiming or wounding of any horse, ox or other cattle, or any sheep, belonging to another, shall be misdemeanors and punishable as such. (2 *R. S.* 693, § 15, *and p.* 695, § 26, *with various other sections.*) The English statutes on these, and similar subjects, are very numerous. (*Arch. Cr. Pl.* 326 *to* 350, *ed.* 1846; 2 *Russ. on Cr.* 544, *ch.* 41.) Yet trespasses of this nature are said by Blackstone, not to be indictable at common law. In the fourth volume of his commentaries, (*p.* 243,) he remarks, "*Malicious mischief,* or damage, is the next species of injury to private property, which the law considers as a public crime. This is such as is done, not *animo furandi,* or with an intent of gaining by another's loss; which is some, though a weak excuse : but either out of a spirit of wanton cruelty, or black and diabolical revenge. In which it bears a near relation to the crime of arson ; for as that affects the habitation, so this does the other property of individuals. And therefore, any damage arising from this mischievous disposition, *though only a trespass at common law,* is now by a multitude of statutes made penal in the highest degree."

I know of no principle on which the act described in this indictment can be held to be a public crime. A great outrage it certainly was, and therefore very fit to be considered by the legislature. But the common law regards it as nothing more than an aggravated trespass. See the authorities already referred to. (4 *Bl. Com.* 243 ; 3 *Greenl. R.* 177 ; 3 *Vermont,* 344 ; 2 *East's P. C.* 1074 ; 3 *Burr.* 1698, 1706, 1731.) The judgment should be reversed.          Ordered accordingly.