## THE STATE OF KANSAS V. J. LEEFORD BRADY.

1. CERTAIN WORDS, *Libelous*. The following words, "'Tis now almost forgotten that Governor Harvey pardoned his own brother out of the penitentiary; the convict Harvey had been sent to Lansing from Salina," published in a newspaper, if false, are, under the facts and circumstances surrounding this case, libelous.

2. ———— *Libel of Family*. To constitute criminal libel, it is not necessary that the alleged libelous article reflect upon the conduct of any particular person, but, if directed against a family, it is libelous.

3. ———— *Express Malice*. In prosecutions for libel, it is not necessary to prove express malice, where the alleged libelous article is libelous *per se*.

*Appeal from Morris District Court.*

PROSECUTION for libel. December 16, 1889, the defendant *Brady* was sentenced to pay a fine of $10, and the costs of the prosecution. He appeals. The facts appear in the opinion.

*J. G. Mohler*, for appellant.

*J. K. Owens*, county attorney, for The State; *Miller & Ritchie*, and *D. H. Brown*, of counsel.

Opinion by GREEN, C.: This case comes here on appeal from the district court of Morris county, where the defendant

was prosecuted and convicted of criminal libel, for publishing in the Salina *Daily Republican*, of which he was the proprietor, at Salina, Kansas, on the 12th day of November, 1889, the following statement:

"'Tis now almost forgotten that Governor Harvey pardoned his own brother out of the penitentiary; the convict Harvey had been sent to Lansing from Salina."

The information charged that the libel was published of and concerning James M. Harvey, John A. Harvey, George E. Harvey, Z. T. Harvey, J. E. Harvey, and W. S. Harvey. The evidence showed that Dr. W. S. Harvey was a resident of Salina at the time of the publication, and a brother of ex-Governor James M. Harvey. The publication was admitted. The claim is made by the defendant that the language published was not libelous *per se;* that the court below erred in not giving the following instruction to the jury:

"The publication charged as libelous in this case is not libelous *per se;* and before the jury can find the defendant guilty in this case, express malice must be proven."

This instruction was refused by the trial court, and the following given:

"I instruct you, gentlemen of the jury, that to print and publish concerning any person that he has been a convict in the state penitentiary of the state of Kansas, is libelous *per se*, unless the same is true; and in this connection, I further instruct you that there is no attempt on the part of the defendant in this case to prove the truth of the matter charged as libelous, or to show that the same was published for justifiable ends."

I. The defendant insists that the above instruction given by the court was erroneous as applied to this case, and greatly prejudiced the substantial rights of the defendant. This is the decisive and controlling question in this case. Ordinarily, the instructions to the jury should be considered together, and a judgment will not be reversed because some one of them fails to state the law applicable to the facts, with sufficient qualifications, provided the defects be cured in other instructions. (*Rice v. City of Des Moines*, 40 Iowa, 638; *The State v.*

*Maloy*, 44 id. 104.) In the eleventh instruction, which is complained of, the court said to the jury that to print and publish concerning any person that he had been a convict, was libelous *per se*, unless the same was true. We see no error in this, taken in connection with the instructions as an entirety. Libel has been defined by Judge Story to be any publication, the tendency of which is to degrade and injure another person, or to bring him into contempt, hatred or ridicule, or which accuses him of a crime, punishable by law, or of any act odious and disgraceful in society. (*Dexter v. Spear*, 4 Mason, 115; Newell, Defam., 37.)

In this case the alleged libel charged that Governor Harvey had pardoned his own brother out of the penitentiary; that the convict Harvey had been sent to Lansing from Salina. This was certainly charging that one of the Harvey brothers had been convicted of a felony, and comes clearly within the definition of libel, as defined by the crimes act:

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation, made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives and friends." (Gen. Stat. of 1889, ¶ 2444.)

To call a person a returned convict, or otherwise to falsely impute that he has been tried and convicted of a criminal offense, is actionable. (Newell, Defam., 109; *Fowler v. Dowdney*, 2 Moody & R. 119; *Bell v. Byrne*, 13 East, 554.)

We think the trial court committed no error in giving the eleventh instruction.

II. The appellant again contends that the statement published referred to no particular one of the Harvey family as having been a prison convict. While this objection might be urged with some force in a civil suit for damages, we do not think it is good in a criminal prosecution for libel. The law is elementary that a libel need not be on a particular person, but

may be upon a family or a class of persons, if the tendency of the publication is to stir up riot and disorder, and incite to a breach of the peace. (*Rex v. Williams*, 5 Barn. & Ald. 595; *Rex v. Osborne*, 2 Barnard, 138, 166; 2 Bish. Crim. Law, 7th ed., § 934; 2 Starkie, Slander, 213; Russell on Crimes, 1st Am. ed., 305, 332.)

A scandal published of three or four, or any one or two persons, is punishable at the complaint of one or more, or all of them. (Holt on Libel, 247.) In *Palmer v. City of Concord*, 48 N. H. 211, the supreme court said:

"As these charges were made against a body of men, without specifying individuals, it may be that no individual soldier could have maintained a private action therefor; but the question whether the publication might not afford ground for a public prosecution is entirely different. Civil suits for libel are maintainable only on the ground that the plaintiff has individually suffered damage. Indictments for libel are sustained principally because the publication of a libel tends to a breach of the peace, and thus to the disturbance of society at large. It is obvious that a libelous attack on a body of men, though no individuals be pointed out, may tend as much or more to create public disturbance as an attack on one individual; and a doubt has been suggested whether the fact of numbers does not add to the enormity of the act."

III. The defendant claims there was error in the court's refusing the fourth special instruction asked — that before the jury could convict, express malice must be proven. We do not think this is the legal rule. In prosecutions for libel, malice is inferred from the nature of the charge, and when the publishing of words libelous *per se* is once proven, malice is inferred, as a person is presumed to have intended the consequences of his own acts. Chief Justice Shaw has clearly stated the rule:

"It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will toward the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of matters; but if in pursuing that

design he willfully inflicts a wrong on others which is not warranted by law, such act is malicious." (Newell, Defam., 317; *Commonwealth v. Snelling*, 15 Pick. 340; *Pledger v. The State*, Ga., 3 S. E. Rep. 320.)

The want of actual intent to vilify is no excuse for a libel; and if a man deems that to be right which the law pronounces wrong, the mistake does not free him from guilt. (*Curtis v. Mussey*, 6 Gray, 261; 1 Bishop, Crim. Law, §309; *Reynolds v. United States*, 98 U. S. 145.)

Upon a careful examination of the errors complained of, we are satisfied that the court below committed no error, and recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.